WARNER BROS. CO. v. ROBERT N. BASSETT CO. et al.

(Circuit Court, D. Connecticut. March 24, 1905.)

No. 1,074.

PATENTS—VALIDITY AND INFRINGEMENT—CORSET STEEL TIPPING MACHINES.

The Seeley patents, Nos. 589,579 and 589,580, for tipping machines for fastening the tips on corset steels, in which the steel is passed through one machine which tips one end automatically, transferred to another, which as it passes back tips the other end, in view of the prior art, which contained single tipping machines, disclose patentable novelty only in the transferring mechanism, and they are void because such mechanism was not the invention of the patentee, but of another. Also *held* not infringed if validity is conceded.

In Equity. Suit for infringement of patents. On final hearing.

Seabury C. Mastick, for complainant.
John P. Bartlett, for defendants.

PLATT, District Judge. This is the usual action for injunction and accounting, based upon letters patent Nos. 589,579 and 589,580, both dated September 7, 1897. The earlier number was applied for on January 15, 1897, and the later on May 18, 1897.

In No. 589,579 the claims in issue are 1, 3, 11, and 12:

"(1) In a tipping-machine, the combination with means for feeding blades successively first in one direction and then in another, chutes or holders for tips arranged to feed the tips successively into position opposite the advancing ends of the blades, and means for compressing the tips upon opposite ends of the blades, substantially as described."

"(3) In a tipping-machine, the combination with chutes or holders for containing tips, means for feeding blades successively to present first one end and then the other of each blade to the tips in the holders and means for compressing the tips upon the ends of the blades, substantially as described."

"(11) The combination with the blade and tip-feeding devices, of compressor-wheels arranged beyond the tip-feeding devices to compress the tips upon the ends of the blades, substantially as described."

"(12) In a tipping-machine, the combination with means for feeding blades in one direction, of devices for applying and securing a tip to one end of the blades, means for feeding the blades in the opposite direction, mechanism for transferring the blades into position to be engaged by said means, and devices for applying and securing a tip to the untipped end of the blades, substantially as described."

In No. 589,580 the claim in issue is 2:

"(2) In a tipping-machine, the combination with means for feeding blades in one direction, of devices for applying and securing a tip to one end of each blade, means for feeding the blades in the opposite direction, and a traveling belt for transferring the blades into position to be engaged by said latter means, and devices for applying and securing tips to the untipped ends of the blades, substantially as described."

There are three defenses: (1) That Nilson was the inventor, not Seeley; (2) noninfringement; (3) that the claims, if broad enough to admit infringement, are invalid for want of patentable novelty.

It is convenient to discuss the question of infringement at the outset, because what is said will throw a light upon the bearing of the third defense thereon, and I shall then say a few words in re-

spect of the first defense. The patent of the earlier number, if not positively inoperative, does not appear to have been very satisfactory, and it comes dangerously near to being a paper patent. The other patent has been used by the complainant, a large corset manufacturer, in the construction of about four machines, made on the heels of the patent, in 1897 or 1898, and there its utility stops. In fact, the old foot-press single tipper is still in operation at the factory. The two patented constructions are quite alike, except in one respect, which will be explained in a moment. They are really made up of two automatic machines for tipping one end only of a corset steel (called "single tippers"), put side by side, oppositely placed, and connected by mechanism intended to automatically effect the transfer of the corset steel as it emerges from the first single tipper, across to the line of feed of the second single tipper. It is in this transfer mechanism that we find the distinguishing features of the two patents. Letters patent issued to Thomas B. De Forest as long ago as May 7, 1878 (No. 203,428), disclosed a continuously operating automatic double tipping corset steel machine, with hoppers, chutes, and compressing devices. The result aimed at was, therefore, old when Seeley entered the field, and it was for him to devise a new way of reaching that result. It is obvious that the above disclosure removes the greater part of the alleged novelty from the Seeley machines. The Hotchkiss patent, dated April 23, 1895, No. 537,891, shows how tips can be fed from a hopper and through a chute. The patent to Cook and Carter, dated February 18, 1896, No. 554,773, which shows upon its face that it was prepared by the same solicitors who appear in the Seeley patents, does not show, it is true, a corset steel tipping-machine, but it teaches us how to cover automatically similar steels or blades throughout their length. It shows how such strips can be fed into the bite of feed rollers, and so carried along into the cutting devices. The "feed wheels, 7 and 8," are in advance of "the presser wheels, 12 and 13," and these latter are of the same construction as the "compresser wheels" of the Seeley patents. Avoiding the wealth of illustration which the prior art affords, it is safe to assert of complainant's machines that the hoppers and chutes are old, that the feed rolls are old, that the compression rolls are old, and that a combination which feeds tips from a hopper through a chute to be engaged with an approaching article, which will thereafter reach a compressing device is old. In other words, the single tipper is old. The only novelty is that which appears in the way of combining two single tippers by a transfer mechanism. For that element in the combination it is fair to give the patentee the benefit of the mental conception which led to its production, but we cannot go further. The doctrine of equivalents should not be prostituted for the purpose of adding something to that conception.

Let us see what the patentee's notion was. In both constructions it is evident that the feed rolls which engage the corset blade after it has passed the compression device are essential to the transfer mechanism. In the earlier number the rolls seize the blade and compel its delivery into a peculiar chamber so arranged

that the blade is pushed laterally out of the line of feed and into the receiving chamber. A successive delivery of blades into this chamber causes the first blade to come nearer the line of return feed on the other side of the chamber, and when the chamber has filled that blade is started on its homeward journey. The second machine is simpler, but the primal inventive conception is about the same. The peculiar chamber, with its complicated lever attachments, is dispensed with, and the feed rolls deliver the blade upon a flat table and under an endless belt, which carries the blade across the table with a wiping motion, toward the line of return feed. The blade must, however, pass under the first pair of necessary feed rolls, so as to depress the return feed rolls on the other side, the lever, G, pendulum-like, alternately lifting and depressing the feed rolls as blades pass beneath them. It appears, therefore, that in both machines the transferring mechanism is dependent for its automatic double tipping action upon the co-operation and co-action of at least two single tipped blades. In the defendants' machines there is no vestige of this kind of transfer mechanism. After the blade first leaves the compression rolls, the momentum then received projects it into space, and it falls by gavity, directly upon the line of return feed. The atmosphere does the transferring. The necessity for the coaction of two single tipped blades does not exist, and in no sense do such blades coact or affect each other. It is a simple matter, indeed, to toss an untipped blade upon the return feed mechanism, and receive it single tipped at the point where the double tipping operation usually starts. The transferring mechanism must obviously be read into any claims from which it is absent, because to find any novelty its presence is a necessity. Manifestly there is no infringement.

I have said less in giving reasons for the "faith that is in me" in the above respect than I might have deemed wise if it were not also very clear to me that the first defense is sustained by the proofs. Let me state, as briefly as I can, why I am satisfied that Mr. Nilson, rather than Mr. Seeley, is the author of whatever may smack of novelty in the patents in suit. If Mr. Seeley had asked the Patent Office for a single tipper patent, his treatment there might have differed from that which actually took place, and we certainly should not be confronted with the present issues. To my mind, however, the evidence clearly establishes the proposition that Mr. Seeley never approached the conception of anything beyond that. After much experimenting and stress he evolved a single tipper construction shown in defendants' exhibit "Seeley Sketch of Single Tipper." This he turned over to Nilson along about September 9, 1896. The single tipper was completed in December, 1896. Late in October Nilson had prepared castings for a double tipper, and began to construct one, while work on the single tipper continued. This was his own notion, and for a time he and his assistant kept it covered whenever Seeley came in to look at the single tipper. The double tipper was delivered to Warner Bros. late in February, 1897. Nilson had November and December to give up to the double tipper construction before the single tipper

was delivered. During this time the construction undoubtedly came under Mr. Seeley's observation, and he may have made some idle remarks in the way of advice, but all through the work Nilson was the master mind, and was evolving in concrete form a nebulous notion which came to him by reason of his association with the single tipper. The patent attorneys spent two or three days at his factory making the sketches which they required for the patent application, which was filed on January 15th. This is the patent which shows the complicated system of springs in the transfer mechanism. Before the machine was delivered, late in February, the spring mechanism turned out to be inoperative. Nilson and Coulter, between them, thought out the belt transference plan, and Nilson used it. This worked very well, and it struck Seeley that it would be well to get as good a thing as that into the patent. So Coulter made an outline drawing, which is in evidence, about which Nilson suggested a couple of changes. The matter then went on to the attorneys at Washington and laid the foundation for the drawing and specification of 589,580, the changes suggested by Nilson appearing in Fig. 2 of the drawings. The rebuttal testimony does not help Mr. Seeley. Warner Bros. had a machine department and Mr. Seeley could have developed an idea right at home, but even his single tipper was too crude to be worked out there. He availed himself of Nilson's bright mechanical mind, and that mind went further, and evolved the double tipper. Seeley's crude single tipper idea is used with skill to bolster up an effort to show a disclosure of the double tipper mechanism. But the statements, the drawings, and the exhibits may all be traced back to the fundamental single tipper conception.

I am satisfied that, so far as anything appears which can be twisted into the appearance of a patentably novel conception, it most conclusively sprang from the brain of Nilson, helped, perhaps, by Mr. Coulter on the transfer belt, and that the concrete embodiment of those ideas is due entirely to the efforts of Mr. Nilson.

Let the bill be dismissed.